IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CRAYTONIA BADGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-2886-STA-egb |
| | ) | |
| WARDEN FNU CHAPMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER PARTIALLY DISMISSING CLAIMS AND
DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANTS
SERGEANT MOORE, SERGEANT RICE, OFFICER FELT, OFFICER WARWICK,
CAPTAIN SMITH, AND OFFICER HOWARD

On November 8, 2016, Plaintiff Craytonia Badger, an inmate at the Columbia County Jail in Magnolia, Arkansas, filed *pro se* a Complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion for leave to proceed *in forma pauperis*. The Court granted Badger leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). Badger's claims are based on events, which occurred at the West Tennessee Detention Facility ("WTDF") in Mason, Tennessee, making venue proper in this District. The Clerk will record the Defendants as Warden First Name Unknown ("FNU") Chapman, Chief of Security FNU Jones, Unit Manger FNU Huggins, Shift Supervisor Captain FNU Smith, Shift Supervisor Captain FNU Scott, Sergeant FNU Moore, Sergeant FNU Rice, Officer FNU Pugh, Officer FNU Felt, Officer FNU Warwick, Officer FNU Howard, Shift

Lieutenant ("Lt.") FNU Esther,[1] Shift Lieutenant FNU Deitle, Nurse FNU Ray, Nurse FNU Jarmin, Dr. FNU Gills, Case Manager FNU Davis, Mr. FNU Rogers, Assistant Warden FNU Hensley, and Mr. FNU Garrett.[2] Defendants are sued in both their individual and official capacities.

## BACKGROUND

The Complaint alleges that Plaintiff Craytonia Badger was held at WTDF in 2016 while awaiting trial on charges against him in the United States District Court for the Northern District of Mississippi. Badger makes a number of allegations arising from his pretrial detention at WTDF. The Complaint first alleges that prison officials conducted a series of unreasonable searches of Badger's cell and removed legal materials Badger was entitled to possess and damaged Badger's other legal materials. (Compl. at 5, ECF No. 1.) The Complaint alleges that the first search occurred on February 23, 2016, when members of the WTDF S.O.R.T. team, including Sergeant Moore, Officer Warwick, Officer Felt, Officer Davis, Sergeant Rice, Officer Pugh, Officer Rogers, Officer Howard, and Captain Smith, searched the cell and either confiscated or damaged Badger's papers.

The Complaint goes on to allege that officers carried out three additional searches over a four-day period in September 2016. Badger alleges that during the search executed on September 20, 2016, Lieutenant Esther and Officer Howard confiscated approximately 125 pages of legal documents, which Badger had obtained from a state court in Louisiana. (*Id.*) The documents were never returned. (*Id.*) Sergeant Moore and Captain Smith confiscated over 800

---

[1] Badger's First Amended Complaint changes the party named as Defendant West to Defendant Esther. (ECF No. 5)

[2] Defendants Davis, Rogers, Hensley, and Garrett are added as parties in Badger's First Amended Complaint. (ECF No. 5.) According to the pleadings, Officer Davis is also a case manager at the jail. First Am. Compl. ¶ 1.

pages of legal materials during searches on September 23 and 24, 2016, including a trial transcript and sentencing transcript from one of Badger's other criminal cases in the state of Mississippi. (*Id.*) Warden Chapman, Assistant Warden Hensley, and Chief of Security Jones gave the order for each of the searches. (*Id.*) Badger alleges that the loss of his legal materials prevented him from properly preparing a defense for a federal sentencing hearing in December 2016. (*Id.* at 11–12.)

The Complaint next alleges Eighth Amendment claims for excessive force and the deliberate indifference to a serious medical need. Badger alleges that during the September 23, 2016 search,[3] Sergeant Moore placed handcuffs on Badger very tightly and escorted Badger from his cell to the shower area. (*Id.* at 5.) Badger denies that he was being uncooperative, aggressive or, as Assistant Warden Hensley alleged, that he had spit on an officer. (*Id.* at 5–6.) When Badger advised Sergeant Moore that the handcuffs were tight and he was becoming light headed, Sergeant Moore told Badger he would be "alright." (*Id.*) Badger contends that he was left unattended in the shower and lost consciousness, causing Badger to fall and hit his head. (*Id.* at 6.)

Badger goes on to allege that a number of other prison officials failed to loosen the handcuffs. Badger told Sergeant Rice and Officer Felt the handcuffs had cut off his circulation and caused him to fall and hit his head. (*Id.*) But both officers ignored his request to loosen the handcuffs. (*Id.*) And when Badger finally received medical treatment, he claims Nurse Ray still did not instruct officers to loosen the handcuffs. (*Id.* at 7.)[4] Sometime later, Sergeant Rice

---

[3] Badger's Complaint does not specify during which September search the guards restrained him; however, his grievances and the memorandum attached to his Complaint explain that the episode with tight handcuffs and loss of blood circulation occurred on September 23, 2016.

[4] According to the Complaint, Captain Scott also observed Badger and other inmates

returned to take Badger back to his cell. Sergeant Rice opened Badger's shower door but then shoved Badger back in with the restraints still on, apparently because he claimed Badger lunged at him, an accusation Badger denies. (*Id.* at 8.) Officer Howard then removed Badger from the shower cell and threw Badger down to the floor on Captain Smith's orders. (*Id.*) Badger landed on his back and hit his head hard on the concrete. (*Id.*) At that point Officer Rice, Officer Felt, and Captain Smith surrounded Badger while Officer Warwick kneeled on Badger's groin. (*Id.*) Badger admits he was angry but denies that he had threatened or harmed any correctional officers during the episode. (*Id.*) Badger alleges that even after the officers returned him to his cell and removed the handcuffs, he continued to black out and fell three more times before the day was over. (*Id.* at 9–10.) Badger did not see a doctor until one month later on October 24, 2016. (*Id.* at 13–14.)

The Complaint also alleges a claim related to a disciplinary write-up Badger received, presumably for his alleged conduct during the September 23, 2016, search. Badger alleges that Unit Manager Huggins wrote him up for spitting on an officer. (*Id.* at 10.) Even though Badger was found not guilty of the charge, Badger still received the following discipline: a reduction in his library access to one hour a day for five days out of the week; a requirement that Badger wear full body restraints while in the library; a requirement that he wear a spit mask; and a reduction in his outside recreational activity from two hours per day to 90 minutes. (*Id.* at 10–11.) Badger contends that Unit Manager Huggins's memo, and the resulting punishment, violated his constitutional rights and amounted to retaliation and discrimination. (*Id.* at 11.)

---

handcuffed in the shower area, while guards searched their cells. (*Id.* at 7.) Captain Scott did not attempt to remove the handcuffs even though, as Badger alleges, Corrections Corporation of America ("CCA") policy prohibits restraints on inmates in a secure area. (*Id.*)

As relief for all of these violations, the initial Complaint seeks the following injunctive relief: an immediate transfer from WTDF, a directive for Warden Chapman to provide a health care specialist, and the return of Badger's legal mail and legal materials. (*Id.* at 15.) Badger also seeks compensatory damages from Defendants. (*Id.*)

In an order dated August 24, 2017, the Court granted Badger's motions to amend his initial Complaint. Badger's First Amended Complaint (ECF No. 5) alleges that Case Manager Davis, Mr. Rogers, and Mr. Garrett failed to intervene when Sergeant Moore first placed Badger in handcuffs too tightly and cut off Badger's circulation and when Sergeant Moore, Captain Smith, Officer Warwick, Officer Felt, Officer Rice, and Officer Howard forcibly removed Badger from the shower. (First Amended Compl. at 2, ECF No. 5.) Badger further alleges that Warden Chapman, Assistant Warden Hensley, and Chief of Security Jones conspired to violate his rights by conducting cell searches and by destroying his commissary items and confiscating his shoe strings and legal materials without issuing property slips. (*Id.* at 3.) Lastly, Badger adds that Warden Chapman and Assistant Warden Hensley violated his Due Process and Equal Protection rights by failing to intervene in the violations committed by Unit Manager Huggins and Chief of Security Jones. (*Id.* at 3-4.)

In his Second Amended Complaint, Badger alleges that Chief of Security Jones retaliated against Badger. Chief Jones allegedly made a remark to Officer Camacho, who is not a party to this action, that Badger was intelligent and did not need assistance with his legal research in the library. (Second Amended Compl. at 1, ECF No. 6.) Chief Jones also allegedly warned Officer Camacho that he might end up in court if he continued to help Badger. (*Id.*) The Second Amended Complaint alleges that Unit Manger Huggins and Chief of Security Jones violated

Badger's constitutional rights by requiring him to wear a spit mask during Badger's meeting with his attorney on September 30, 2016.

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the pleadings in this case state a claim on which relief may be granted, the Court applies the Federal Rule of Civil Procedure 12(b)(6) pleadings standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the Complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Ultimately, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) nevertheless requires factual allegations to make a "showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383

(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Even so, *pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). And district courts are not required "to ferret out the strongest cause of action on behalf of pro se litigants." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). In the final analysis, a court "cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011).

## <u>ANALYSIS</u>

Because Badger's claims concern the actions of persons acting under color of federal law rather than state law, his constitutional claims arise under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1974), instead of 42 U.S.C. § 1983.[5] *Bivens* provides a right of action against federal employees who violate an individual's rights under the United States Constitution. "Under the *Bivens* line of cases, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action." *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010).

Before reaching the merits of Badger's claims, the Court holds that Badger's request for transfer and other injunctive relief related to WTDF is moot. Badger has been transferred to

---

[5] Title 42 U.S.C. § 1983 creates a private right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under section 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

another prison since the filing of his initial Complaint.  Therefore, Badger's request for transfer and other relief specific to WTDF is denied as **MOOT**. The Court now considers each of Badger's remaining claims.

## I.    Claims against Each Defendant in His Official Capacity

Badger seeks to hold each Defendant liable in his official capacity.  Badger's official capacity claims against Defendants are properly construed as claims against their employer, CCA.  However, the Complaint does not allege a viable claim against CCA or the CCA Defendants in their official capacities.  In order to hold CCA liable under *Bivens* or section 1983, Badger "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).  A prisoner cannot hold a private corporation liable for the violation of his constitutional rights "under a theory of *respondeat superior*."  *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001).  In the absence of some allegation that CCA's policy or custom was the moving force behind a constitutional injury, Badger has failed to state a claim against CCA or any Defendant in his official capacity as an employee of CCA.  Therefore, Badger's official capacity claims against Defendants are **DISMISSED**.

## II.    Excessive Force

Badger's core allegation is that jail officials used excessive force, first when he was handcuffed tightly for an extended period of time, and then when guards forced him, while wearing handcuffs, to the ground.  At all times relevant to his causes of action, Badger was a pretrial detainee at WTDF.  The Supreme Court held in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) that excessive force claims brought by pretrial detainees should be analyzed under the Fourteenth Amendment's standard of objective reasonableness, rejecting a subjective standard

that takes into account a defendant's state of mind. *Id.* at 2472–73. "[O]bjective reasonableness turns on the facts and circumstances of each particular case. *Id.* at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kinglsey*, 135 S. Ct. at 2473; *see also Graham* at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id.*

The Court holds that Badger has alleged a plausible excessive force claim based on the tight application of handcuffs. To establish an excessive force claim based on handcuffing, a plaintiff must show that "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). Badger's allegations meet these

requirements and state a claim against Sergeant Moore, Sergeant Rice, and Officer Felt. The pleadings allege that Badger informed each of these prison officials that the handcuffs were too tight but that none of them acted to loosen or remove the handcuffs before Badger fell and injured his head.[6] For purposes of this screening, Badger has alleged enough factual matter to state a Fourteenth Amendment claim under § 1983.

Likewise, the Court holds that Badger has a stated an excessive force claim for forcing him to the ground and restraining him. Badger alleges that Captain Smith ordered Officer Howard to remove Badger from the cell at which point Officer Howard threw Badger to the floor. Sergeant Rice and Officer Felt looked on as Officer Warwick kneeled and applied pressure to Badger's groin. Badger acknowledges that the officers reported that their use of force was necessary. Badger denies, though, that he made any threat or otherwise behaved in an unruly manner. Badger further alleges that he was in handcuffs at the time. A factual dispute then exists about whether Captain Smith's alleged order to take Badger to the ground or Officer Howard's or Officer Warwick's alleged use of force was reasonable under the circumstances. *Kingsley*, 135 S. Ct. at 2473. Therefore, Badger's excessive force claim based on the officers' conduct in the shower area will proceed against Captain Smith, Officer Howard, and Officer Warwick.

Badger also seeks to hold various prison officials liable for his injuries due to their alleged failure to intervene on his behalf: Captain Smith and Nurse Ray when each did not order guards to remove the handcuffs; Officer Davis, Mr. Rogers, and Mr. Garrett for being present when the handcuffs were applied too tightly; and Sergeant Rice and Officer Felt for failing to

---

[6] By contrast, the pleadings allege that Captain Scott, Case Manager Davis, Mr. Rogers, and Mr. Garrett were merely present while Badger was handcuffed. The Court considers the merits of these additional claims below.

stop Officer Howard from throwing Badger to the floor. In order to establish a claim against a prison official for the failure to intervene or protect an inmate from another officer's use of excessive force, the plaintiff must show "that the officer observed or had reason to know that excessive force would be or was being used and that the officer had both the opportunity and the means to prevent the harm from occurring." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 945–46 (6th Cir. 2017) (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Badger has failed to allege enough facts to show why these Defendants would be liable to him for their failure to intervene. The initial Complaint only alleges that Captain Scott, who was at the time the duty supervisor, failed to order other guards to remove Badger's handcuffs, not because the cuffs were too tight but because facility policy did not require handcuffing inmates in a secure area. Badger has not alleged that this violation of policy was itself an act of excessive force or that Captain Scott had any knowledge of Badger's cuffs being too tight. Badger has not stated a plausible excessive force claim against Captain Scott. As for Nurse Ray, Badger alleges that he informed her the handcuffs were too tight and that she agreed with him. But nothing in the pleadings shows why Nurse Ray, a medical professional who actually provided Badger with medical attention, should be liable to him. For similar reasons, Badger has not alleged enough facts to show why Officer Davis, Mr. Rogers, or Mr. Garrett knew the handcuffs were too tight or should have intervened to loosen them. Nor are there any facts in the pleadings to show that Sergeant Rice or Officer Felt knew Officer Howard's takedown would be excessive under the circumstances or that either Defendant had the means and opportunity to prevent Officer Howard from using excessive force. For these reasons, Badger's failure to intervene claims against Captain Scott, Officer Davis, Mr. Rogers, Mr. Garrett, Sergeant Rice, and Officer Felt are **DISMISSED**.

**III. Deliberate Indifference to a Serious Medical Need**

Badger next alleges that other Defendants failed to provide him with needed medical treatment. "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)). The Sixth Circuit "analyze[s] a Fourteenth Amendment claim for deliberate indifference to a serious medical need under the same rubric as Eighth Amendment claims brought by prisoners." *Hopper v. Phil Plummer*, 887 F.3d 744, 756 (6th Cir. 2018), *petition for cert. filed*, (U.S. July 30, 2018) (No. 18-150) (citation and internal quotation marks omitted).

Some question currently exists over the deliberate indifference standard and whether the Eight Amendment's concept of deliberate indifference also applies to a pretrial detainee's constitutional claim for inadequate medical care under the Fourteenth Amendment. The Supreme Court decided in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) that a pretrial detainee's excessive force claim should be analyzed under the Fourteenth Amendment's objective reasonableness standard and rejected a test based on the officers' "subjective[] awareness that their use of force was unreasonable." *Kingsley*, 135 S. Ct. at 2470, 2472–73. The Sixth Circuit recently "recognize[d] that [*Kingsley*'s] shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [a pretrial detainee] need even show that the individual defendant-officials were subjectively aware of her serious medical conditions and nonetheless wantonly disregarded them." *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018).

*Kingsley* has led other Circuits to reconsider the mental state required in other kinds of Fourteenth Amendment cases brought by pretrial detainees. *See Darnell v. Pineiro*, 849 F.3d 17, 34–35 (2d Cir. 2017) (holding that after *Kingsley* the Eighth Amendment's deliberate indifference standard was not the same as deliberate indifference under the Fourteenth Amendment and redefining the "subjective prong" of a pretrial detainee's conditions of confinement claim); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (*en banc*), *cert. denied sub nom. Los Angeles Cnty. v. Castro*, —— U.S. ——, 137 S. Ct. 831, 197 L.Ed.2d 69 (2017) (interpreting *Kingsley* to mean that the objective reasonableness standard applies to a pretrial detainee's failure-to-protect claim). *But see Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017) (concluding that the panel was bound by its own precedent "apply[ing] a subjective standard [in failure-to-protect claims] post-*Kingsley*").

For purposes of screening, the Court will apply the Eighth Amendment's deliberate indifference standard to Badger's Fourteenth Amendment inadequate medical care claims. In a number of reported cases since *Kingsley*, the Sixth Circuit has continued to apply the Eight Amendment's deliberate indifference standard in denial of medical treatment cases brought by pretrial detainees. *See Winkler*, 893 F.3d at 890; *Bays v. Montmorency Cnty.*, 874 F.3d 264, 268 (6th Cir. 2017) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983)); *Brown v. Chapman*, 814 F.3d 436, 444 (6th Cir. 2016); *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015). And in *Richmond*, despite wondering whether *Kingsley* had altered the deliberate indifference standard under the Fourteenth Amendment, the Sixth Circuit once again applied the Eighth Amendment's deliberate indifference standard to a pretrial detainee's claims for inadequate medical care. *Richmond*, 885 F.3d at 937–38. This Court is bound to apply the law

and precedent as announced by the Court of Appeals. Therefore, the Court will assess Badger's Fourteenth Amendment inadequate medical care claims under the same deliberate indifference standard the Sixth Circuit applies to Eight Amendment inadequate medical care claims.

The Eighth Amendment deliberate indifference standard consists of both objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective element requires that the deprivation be "sufficiently serious." *Id*. In the context of the denial of medical care, the objective element under *Farmer* requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Id.* at 897 (internal quotation marks omitted).

To establish the subjective element of the claim, a prisoner must show that a prison official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id*. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards the risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not state a claim for deliberate indifference. *Id.* at 838.

The Court assumes without deciding that the injury to Badger's wrists and head, as described in the pleadings, was objectively serious for purposes of the Court's constitutional analysis. However, Badger has alleged no facts to establish the subjective element of his claim, *i.e.* that Defendants acted with deliberate indifference to his serious medical needs. While

Badger alleges Defendants failed to provide treatment, it is clear from the pleadings that Badger received some form of treatment within a short period of time. Where the plaintiff has received some medical treatment, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Badger's claims, if anything, sound in negligence or medical malpractice, neither of which suffice to make out a section 1983 claim. The Court concludes that Badger fails to allege the subjective component of a claim for denial of medical care. Therefore, Badger's claims for the denial of medical care are **DISMISSED.**

## IV. Due Process Claims

Badger next challenges a disciplinary memorandum limiting his institutional privileges and the loss of his legal papers as a denial of his due process rights. Badger alleges that as a disciplinary consequence of the September 23, 2016 incident, he had his library and recreational time limited and was forced to wear full restraints and a spit mask. Assuming without deciding that Badger's transfer out of WTDF to another facility has not rendered these disciplinary issues moot, Badger's claim implicates procedural due process rights protected by the Fourteenth Amendment. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A prison disciplinary action does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

This is so because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (quoting *Sandin,* 515 U.S. at 485). Not surprisingly then, the Sixth Circuit has held that a number of common incidents of prison life do not raise due process concerns. *Grinter*, 532 F.3d at 574 (the use of four-point restraints and without the presence of a nurse); *Bazzetta v. McGinnis,* 430 F.3d 795, 802–03 (6th Cir. 2005) (banning visitors); *Harbin–Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (designating prisoner a threat to others); *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (increased security classification); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (assigning an inmate serving a life sentence to segregation without a reclassification hearing).

Badger contends that as a result of the disciplinary memo, his library access and recreational time were reduced and that he had to wear restraints and a spit mask. The Court holds that none of these disciplinary measures violated Badger's due process rights. The record of the grievance attached to Badger's initial Complaint shows that his access to the law library was limited to five hours per week for a period of two weeks. Ex. D-3, Compl. (ECF No. 1-1, Page ID 23.) Likewise, Badger was required to be in restraints and wear a spit mask while outside of his cell (except for times in the shower) for a period of two weeks. *Id.*[7] These types of punishments, limited in their duration, do not constitute the kinds of atypical and significant hardships that will support a due process claim. *See Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir.

_____

[7] The grievance, no. 9150, which Badger submitted September 28, 2016, refers to the "mask" only one time, in the section of the form where Badger stated his request for relief: "To receive my law library without belly chains, black box, and mask." Ex. D-3, Compl. (ECF No. 1-1, Page ID 20.) And Badger's reference to the "mask" suggests that he was only required to wear the restraints and spit mask while in the library. *Id.* The response to the grievance (Page ID 23) simply describes the use of "restraint procedures" but does not mention the mask specifically. The response notes that the restraints were imposed for a period of two weeks. The Court construes "restraint procedures" to include the use of a spit mask.

2013) (holding that a thirteen-year term of administrative segregation violated due process); *cf. Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998) (holding that 30-month term of administrative segregation did not violate due process).

The Court further holds that the search of Badger's cell and confiscation of his legal materials did not violate his federal due process rights. "The Supreme Court has held that procedural due process is not violated when a state employee deprives a prisoner of his property through an intentional or negligent random and unauthorized act if the state provides an adequate post-deprivation remedy." *Cody v. Slusher*, No. 17-3764, 2018 WL 3587003, at *3 (6th Cir. Mar. 8, 2018) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). In other words section 1983 is "not a remedy for addressing the taking of property if a post-deprivation remedy is available," including the intentional confiscation of legal papers. *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Parratt v. Taylor,* 451 U.S. 527, 543–44 (1981); and *Hudson*, 468 U.S. at 533)).

In this case other remedies for the loss of his papers were available to Badger. *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 228 (2008) ("Federal agencies [including the BOP] have authority under 31 U.S.C. § 3723(a)(1) to settle certain claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment."); *Bowens v. U.S. Dept. of Justice*, 415 F. App'x 340, 344 (3d Cir. 2011) (holding that the BOP's administrative remedy program is an "adequate post-deprivation system" for purposes of *Hudson*); *Clark v. Ormond*, No. 6:16-246, 2018 WL 2013031, at *3 (E.D. Ky. Apr. 30, 2018); *Sautter v. Halt*, No. 4:12CV2399, 2015 WL 1915251, at *13 (N.D. Ohio Apr. 27, 2015). Because of the other procedures available to Badger, the Court concludes that Badger has failed

to state a due process claim for the loss of his legal papers.  For all of these reasons, Badger's Fourteenth Amendment Due Process claims are **DISMISSED**.

## V.     Equal Protection Claims

Although Badger alleges that his equal protection rights have been violated, he does not have a valid equal protection claim.  The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.  Most equal protection claims "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted).  Badger does not allege that he is a member of a protected class.[8]  That Defendants may have treated Badger differently than other prisoners is insufficient to state a claim because prisoners are not a protected class for equal protection purposes.  *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Berry v. Traughber*, 48 F. App'x 483, 485 (6th Cir. 2002) and *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) ("neither indigents nor prisoners are a suspect class").

Badger's pleadings do not allege any facts suggesting that Badger was arbitrarily treated differently than similarly situated prisoners at the jail.  On the contrary, the pleadings suggest that Badger was one inmate among many who were removed from a cell and placed in handcuffs while guards searched their cells.  Therefore, Badger's equal protection claims are **DISMISSED**.

## VI.    First Amendment: Access to Courts & Retaliation

Badger next claims that the confiscation of his legal materials and denial of library access violated his First Amendment right of access to the courts and amount to retaliation.  "Prison

---

[8] Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right.  This case does not involve the exercise of a fundamental right.

officials may not erect any barriers that impede an inmate's access to the courts." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). "Prison officials may violate a prisoner's right of access to the courts by confiscating and/or destroying the prisoner's legal materials or papers." *Ruiz v. Fisher*, No. 96-4212, 1998 WL 661139, at *2 (6th Cir. Sept. 2, 1998) (citing *Simmons v. Dickhaut,* 804 F.2d 182, 183–84 (1st Cir. 1986)). A plaintiff must still allege an actual, specific injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Id.* (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Other than a conclusory allegation about the effect on his sentencing, Badger has not shown how the loss of his legal papers or his two weeks of limited access to the library caused him an actual injury. Badger alleges that he was deprived of court documents from separate proceedings against him in Mississippi and Louisiana state court, all of which would presumably be relevant for purposes of his sentencing in federal court to the calculation of Badger's criminal history. The record of Badger's case in the Northern District of Mississippi, N.D. Miss. no. 1:16-00014, shows that the district court sentenced him to 63 months incarceration on January 25, 2017.[9] According to the sentencing hearing transcript (ECF No. 60, N.D. Miss. no. 1:16-

---

[9] In assessing the sufficiency of Badger's pleadings, the Court may take judicial notice of the proceedings in the Northern District of Mississippi. Consistent with Rule 12(b)(6), the Court may "consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)). In this case, Badger's sentencing and the procedural history of his case in the Northern District of Mississippi are "capable of accurate and ready

00014), the district court considered objections to the presentence report in Badger's case, both objections filed through counsel as well as Badger's *pro se* objections. *See* Sentencing Tr. 4:18-5:12. The district court concluded that 25 of Badger's objections related to his criminal history would have no effect on the calculation of his criminal history category, *id.* at 7:17-24. The Fifth Circuit affirmed the district court's judgment on October 24, 2017. (ECF No. 67, N.D. Miss. no. 1:16-00014). Because the Northern District of Mississippi found that Badger's objections to his criminal history, even if sustained, had no effect on his criminal history calculation, Badger cannot show that the loss of his papers caused him an actual injury. Therefore, Badger's First Amendment claim for the denial of access to the courts is **DISMISSED**.

Badger also alleges that Chief of Security Jones retaliated against him by directing Officer Camacho to stop assisting him with his legal research. Second Amended Compl. at 1, ECF No. 5. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two— that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The filing of a non-frivolous grievance, for example, is protected conduct under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). But in this case, Badger fails to allege that he engaged in any protected activity, that Chief Jones's alleged directive to Officer Camacho was an adverse action, or that a causal connection exists between a protected activity and Chief Jones' remarks.

---

determination from the public docket of the court of record." *Fla. Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1012 n.2 (6th Cir. 2015).

Without more detailed allegations, the Complaint fails to state a First Amendment retaliation claim. Therefore, Badger's First Amendment claim against Chief of Security Jones is **DISMISSED**.

## VII. Conspiracy

As his final cause of action, Badger's pleadings can be read to assert a conclusory claim for conspiracy. The Sixth Circuit has defined a civil conspiracy claim under § 1983 as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). A plaintiff must plead the elements of civil conspiracy "with some degree of specificity." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). A blanket assertion unaccompanied by supporting facts that parties conspired with each other is a simply legal conclusion, which the Court need not accept as true. *Id.* at 563–64 (collecting cases). At a bare minimum, an allegation of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required. *Id.* at 564. Badger's barebones allegations that Defendants conspired with each other are entirely devoid of supporting facts. Therefore, Badger's civil conspiracy claim is **DISMISSED**.

## CONCLUSION

The Court **DISMISSES** Badger's Complaint against Defendants Warden Chapman, Chief of Security Jones, Unit Manager Huggins, Captain Scott, Officer Pugh, Lieutenant Esther,

Lieutenant Deitle, Nurse Ray, Nurse Jarmin, Dr. Gills, Case Manager Davis, Mr. Rogers, Assistant Warden Hensley, and Mr. Garrett, all for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Badger has alleged plausible Fourteenth Amendment excessive force claims against Defendants Sergeant Moore, Sergeant Rice, Officer Felt, Captain Smith, Officer Warwick, and Officer Howard.

It is **ORDERED** that the Clerk shall issue process for Defendants Sergeant Moore, Sergeant Rice, Officer Felt, Captain Smith, Officer Warwick, and Officer Howard, and deliver that process to the U.S. Marshal for service. Service shall be made on Sergeant Moore, Sergeant Rice, Officer Felt, Captain Smith, Officer Warwick, and Officer Howard pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally, if mail service is not effective. All costs of service shall by advanced by the United States.

It is further **ORDERED** that Badger shall serve a copy of every subsequent document he files in this case on the attorneys for Sergeant Moore, Sergeant Rice, Officer Felt, Captain Smith, Officer Warwick, and Officer Howard, or on any unrepresented Defendant. Badger shall include a certificate of service on every document filed. Badger must also familiarize himself with Federal Rules of Civil Procedure and the Local Rules of Court.[10] Badger should promptly notify the Clerk, in writing, of any change of address, transfer to another facility, release from custody, or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of the case without further notice.

---

[10] A copy of the Local Rules may be obtained from the Clerk of Court. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.

**IT IS SO ORDERED.**

                                  **s/ S. Thomas Anderson**
                                S. THOMAS ANDERSON
                                CHIEF UNITED STATES DISTRICT JUDGE

                                Date:   November 2, 2018.